**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

**GEORGE CAPLAN,** on behalf of himself and all others similarly situated,

Plaintiff,

v.

**AMERICAN AMICABLE LIFE INSURANCE COMPANY OF TEXAS,** doing business as: **AMERICAN AMICABLE GROUP**,

Defendant.

Case No. 6:26-cv-00176

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

**CLASS ACTION COMPLAINT**

1. George Caplan ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant American Amicable Life Insurance Company of Texas d/b/a American Amicable Group ("American Amicable" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

## PARTIES

5. Plaintiff, George Caplan, is a natural person and a citizen of Massachusetts where he intends to remain.

6. Defendant, American Amicable Life Insurance Company of Texas d/b/a American Amicable Group, is a for profit corporation incorporated in Texas and with its principal place of business at 425 Austin Ave, Waco, Texas 76701.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because it is headquartered in Texas, regularly conducts business, and has sufficient minimum contacts in Texas.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

***The Telephone Consumer Protection Act***

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer

Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

12. "The" result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

13. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

14. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(b)(3), (c)(5).

15. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

16. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

19. The TCPA prohibits the use of artificial or prerecorded voices when calling residential telephone numbers. 47 U.S.C. § 227(b)(1)(B).

20. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

21. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff George Caplan***

22. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

23. Plaintiff's residential telephone number is (978) 263-XXXX (the "landline telephone number").

24. Plaintiff's cellular telephone number is (978) 496-XXXX (the "cellular telephone number").

25. To avoid unsolicited telemarketing calls, Plaintiff personally placed his landline telephone number on the National Do-Not-Call Registry on August 16, 2003. Since then, Plaintiff has not removed his landline telephone number from the National Do-Not-Call Registry.

26. To avoid unsolicited telemarketing calls, Plaintiff personally placed his cellular telephone number on the National Do-Not-Call Registry on April 27, 2019. Since then, Plaintiff has not removed his cellular telephone number from the National Do-Not-Call Registry.

27. Plaintiff uses his landline telephone number and cellular telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

28. Plaintiff has not used his landline telephone number or his cellular telephone number for business purposes.

29. Plaintiff has not associated his landline telephone number or his cellular telephone number with any business.

30. Plaintiff has been the sole owner (i.e., user) of his landline telephone number for approximately the past twenty-eight (28) years.

31. Plaintiff has been the sole owner (i.e., user) of his cellular telephone number for approximately the past ten (10) years.

32. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his landline telephone number and cellular telephone number.

33. Plaintiff has never received reimbursements from any business for his landline telephone number or cellular telephone number.

34. Plaintiff has never taken a business-related tax-deduction for his landline telephone number or cellular telephone number.

35. Plaintiff is not a current or former customer of Defendant.

36. Plaintiff has never had a business relationship with Defendant.

37. Plaintiff never provided his landline telephone number or cellular telephone number to Defendant.

38. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

***Defendant Engages in Telemarketing***

39. Defendant is a Texas based life insurance company that offers whole life, term life, universal life and annuities.[1]

40. Simply put, Defendant sells insurance products and services.

41. Screenshots of Defendant's website are provided below.[2]




---

[1] AMERICAN AMICABLE GROUP, https://www.americanamicable.com/v4/index.php (last visited March 18, 2026).
[2] *Id.*




42. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[3] Indeed, the Bureau of Labor Statistics has reported that the "Insurance Carrier" industry has one of the highest levels of telemarketing.[4]

43. To sell its products and services, Defendant engages in telemarketing campaigns.

44. Defendant has already received numerous complaints about its unlawful telemarketing practices.

45. Screenshots of consumer complaints to the Better Business Bureau are provided below.[5]

---

[3] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.

[4] *Id.*

[5] *Business Profile American Amicable Life Insurance Company of Texas,* BETTER BUSINESS BUREAU, https://www.bbb.org/us/tx/waco/profile/life-insurance/american-amicable-life-insurance-company-of-texas-0825-35073/complaints?sort=recent&status=&type=salesadvertising (last visited March 18, 2026).

**Initial Complaint**

**Date:** 01/27/2025

**Type:** Sales and Advertising Issues

**Status:** Answered

This company uses overseas call centers who spoof their numbers to continue to call and solicit business on their behalf. No matter how many times you tell them to stop calling, they continue to call over and over. This is harassment and illegal and American Amicable should be held accountable.

**Business Response**

**Initial Complaint**

**Date:** 10/03/2024

**Type:** Sales and Advertising Issues

**Status:** Answered

I have received [illegible] the past 3 days. I have on at least 20 occasions asked to be removed from the call list and been reassured that action would be carried out 7 times and I am still getting these calls.

**Business Response**

**Date:** 10/04/2024

***Defendant violated the TCPA***

46. As explained below, Defendant violated the TCPA numerous times.

47. On February 16, 2026, at 11:54 a.m., Defendant used the telephone number (978) 358-2631 and called Plaintiff's landline telephone number.

48. The call was "spoofed" to appear as though it originated from phone number (978) 358-2631. "Spoofing" is a technique is used to conceal the true identity of the caller and unlawful nature of the call. Spoofed calls frequently display the same area code as the call recipient to deceive individuals into believing the call is legitimate or from someone they recognize, thereby increasing the likelihood that the call will be answered.

49. Because the call appeared to come from Plaintiff's local area code he answered the call, and Defendant then attempted to solicit Plaintiff to purchase life insurance products or services.

50. When Plaintiff initially answered, the telephone call featured a crisp and articulate voice—which noticeably lacked the typical pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the telephone call in question used a prerecorded or artificial voice.

51. During the telephone call, Plaintiff said he was recording the call. The caller did not respond to Plaintiff's voice. Rather, the caller continued to speak uninterrupted. Thus, on information and belief, the telephone call in question used a prerecorded or artificial voice.

52. The telephone call was then transferred to a representative who identified himself as Adam and that he worked for American Amicable.

53. Plaintiff was not interested in Defendant's life insurance products or services.

54. Yet, on February 24, 2026, at 10:46 a.m., Defendant used the telephone number (978) 813-8234 and called Plaintiff's cellular telephone number. This call was also spoofed to appear to come from Plaintiff's local area code.

55. Because the call appeared to come from Plaintiff's local area code he answered the call, and Defendant then attempted to solicit Plaintiff to purchase life insurance products or services.

56. The caller identified himself as Shawn Albert from American Amicable and asked for Plaintiff's age. Once Plaintiff responded, and shared that he would record the rest of the call the caller hung up.

57. On March 4, 2026, at 11:25 a.m., Defendant used the telephone number (978) 336-4482 and called Plaintiff's cellular telephone number. This call was also spoofed to appear to come from Plaintiff's local area code.

58. Because the call appeared to come from Plaintiff's local area code he answered the call, and Defendant then attempted to solicit Plaintiff to purchase life insurance products or services.

59. When Plaintiff initially answered, the telephone call featured a crisp and articulate voice—which noticeably lacked the typical pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the telephone call in question used a prerecorded or artificial voice.

60. During the telephone call, the caller did not respond to Plaintiff's voice. Rather, the caller continued to speak uninterrupted. Thus, on information and belief, the telephone call in question used a prerecorded or artificial voice.

61. The telephone call was then transferred to a representative that identified himself as Scott Adams from American Amicable based in Waco, Texas.

62. When Plaintiff refused to answer questions about his private medical information, the caller hung up.

63. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

64. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

65. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

66. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

> **Prerecorded Voice Class**: All persons in the United States (1) whose telephone number (2) received one or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period, (4) within four years prior to the commencement of this litigation and up until the date of trial, and (5) when the telephone call used a prerecorded or artificial voice.

67. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

68. Plaintiff reserves the right to amend the class definition.

69. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

70. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

71. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

72. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

73. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

74. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

a. whether Defendant violated the TCPA;

b. whether Defendant violated the TCPA willfully and knowingly;

c. whether Plaintiff is entitled to statutory damages;

d. whether Plaintiff is entitled to treble damages; and

e. whether Defendant should be enjoined from further TCPA violations.

75. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device

provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

76. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

77. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

78. Defendant violated the TCPA willfully or knowingly.

79. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

80. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(1)(A)(iii) OR 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Prerecorded Call Class)**

81. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

82. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations

of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Prerecorded Call Class while using a prerecorded and/or artificial voice.

83. Defendant violated the TCPA willfully or knowingly.

84. Plaintiff and Prerecorded Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

85. Plaintiff and Prerecorded Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Prerecorded Call Class Members.

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

DATED AND SUBMITTED this 19th day of March, 2026.

/s/ Raina C. Borrelli
Raina C. Borrelli
Carly M. Roman (*pro hac vice* forthcoming)
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
croman@straussborrelli.com

*Counsel for Plaintiff and the Putative Class*